**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

VBELLE, INC., *et al.*,

Plaintiffs,

vs.

THE WELLTH COLLECTIVE, LLC, *et al.*,

Defendants.

Case No.: 2:25-cv-00554-GMN-BNW

**ORDER**

Pending before the Court is the Motion for Partial Summary Judgment, (ECF No. 25), filed by Defendants Susan Baleson and The Wellth Collective, LLC ("TWC"). Plaintiffs VBelle, Inc. and Victoria Recaño filed a Response, (ECF No. 30), to which Defendants filed a Reply, (ECF No. 31). Further pending before the Court is the Motion for Partial Summary Judgment, (ECF No. 26), filed by Plaintiffs. Defendants filed a Response, (ECF No. 29). Plaintiffs did not file a Reply, and the time to do so has passed. (*See* TWC Resp., ECF No. 29) (setting a December 9, 2025, deadline for replies). Finally pending before the Court is the Motion for Leave to File Document filed by Plaintiffs. Defendants filed a Response, (ECF No. 34). Plaintiffs did not file a Reply, and the time to do so has passed. (*See* Resp. Mot. Leave, ECF No. 34) (setting a February 24, 2026, deadline for replies).

For the reasons discussed below, the Court GRANTS Defendants' Motion for Partial Summary Judgment and DENIES Plaintiffs' Motion for Partial Summary Judgment and Motion for Leave to File Document.

///

///

///

## I. BACKGROUND

This case arises from a contract dispute between the parties. (*See generally* Compl., Ex. A to Pet. Removal, ECF No. 1-1). In July 2020, Plaintiff VBelle, Inc. and Defendant TWC entered into an Independent Contractor and Confidentiality Agreement (the "Contract"). (TWC Mot. Partial Summ. J. 3:14–21, ECF No. 25); (VBelle Mot. Partial Summ. J. 2:10–14, ECF No. 26); (Contract, Ex. A to TWC Mot. Partial Summ. J., ECF No. 25-1). Under the Contract, VBelle agreed to plan, produce, and promote for TWC a minimum of one event per month focused on culture, food and beverages, music, or celebrities. (Contract at 10, Ex. A to TWC Mot. Partial Summ. J.). In exchange, VBelle was to receive $750,000 in fees, to be paid out in two installments: half upfront within ten days of the execution of the Contract, and the remaining half paid monthly pro rata. (*Id.* at 3). Additionally, TWC agreed to provide VBelle with a $10,000 monthly event budget, reimburse VBelle for "pre-approved expenses," and provide VBelle with a housing allowance of up to $100,000 per year. (*Id.*). The Contract provides that VBelle must submit invoices in order to obtain reimbursement for expenses and the housing allowance. (*Id.*). As part of the Contract, Victoria Recaño, the President and CEO of VBelle, agreed to relocate to Park City, Utah. (*Id.* at 10).

On August 7, 2020, TWC paid VBelle $510,000, reflecting payment of (1) $375,000 under the Contract, (2) $25,000 in moving expenses, and (3) $110,000 for services rendered under a separate contract to produce videos. (TWC Mot. Partial Summ. J. 3:22-24); (VBelle Mot. Partial Summ. J. 2:17–20); (Recaño Dep. 156:21–157:10, Ex. B to TWC Mot. Partial Summ. J., ECF No. 25-2). That same month, Recaño moved to Park City, Utah, where she stayed in a house owned by longtime friend Tony Hsieh. (Recaño Dep. 74:19–75:16, Ex. B to TWC Mot. Partial Summ. J.). Recaño did not pay rent to stay in the house during the months of August, September, and October of 2020. (*Id.* 75:5–77:21). Recaño did not submit any invoices for expenses incurred from the months of August to December 2020, aside from the

$10,000 monthly event budget. (*Id.* 115:9–16).

On December 10, 2020, TWC sent VBelle a Notice of Termination and made no further payments to VBelle. (TWC Mot. Partial Summ. J. 4:5–7); (Not. Termination, Ex. C to TWC Mot. Partial Summ. J., ECF No. 25-3). VBelle did not execute the Notice of Termination and contends that it is invalid. (VBelle Mot. Partial Summ. J. 2:24–25). On January 11, 2021, VBelle sent an invoice to TWC seeking payment for six allegedly outstanding invoices totaling $263,912.27. (Jan. 11 Email, Ex. 4 to Compl., ECF No. 1-1). Five invoices each requested $49,583.33, corresponding to expenses allegedly incurred during each month of the Contract, from August 2020 to December 2020. (*Id.*). The sixth invoice, however, requested only $15,995.62, reflecting a prorated amount from January 1, 2021, through January 11, 2021, which Recaño explained "coincide[d] with [TWC's] letter of cancellation." (*Id.*).

VBelle alleges that it organized several events for TWC while the Contract was still in effect, including: (1) the "World Premiere and Presentation of the N2O Video" on August 6, 2020; (2) a meeting at Hsieh's ranch "for a Jewel performance and dinner" on August 16, 2020; (3) a Paula Abdul Meet and Greet on August 18, 2020; (4) an N2O V.2 "[v]iewing party presentation" at Hsieh's ranch on September 2, 2020; (5) a viewing of a Petra the Rose City video at Hsieh's ranch on September 26, 2020; and (6) a viewing of the Collective Life Story of Paula Abdul video on October 15, 2020. (VBelle Resp. 3:19–28, ECF No. 30).

On September 15, 2024, VBelle filed the instant action in the Eighth Judicial District Court asserting the following claims: (1) breach of contract, (2) unjust enrichment, (3) detrimental reliance, (4) breach of the implied covenant of good faith and fair dealing, (5) alter ego, and (6) fraud. (Compl. ¶¶ 23–63, Ex. A to Pet. Removal). TWC thereafter removed the case to this Court and filed an Answer asserting the following counterclaims: (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) fraud, and (4) negligent misrepresentation. (Ans. ¶¶ 26–53, ECF No. 10).

## II. <u>LEGAL STANDARD</u>

The Federal Rules of Civil Procedure ("FRCP") provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quotation marks and citation omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the

nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 783 (9th Cir. 2002). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by "relying solely on conclusory allegations unsupported by factual data." *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn

in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

Plaintiffs VBelle and Recaño now move for summary judgment on their claims for breach of contract and breach of the implied covenant of good faith and fair dealing. (VBelle Mot. Partial Summ. J. 1:18–28). Defendants TWC and Baleson move for summary judgment on Plaintiffs' claims for breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and alter ego. (TWC Mot. Partial Summ. J. 1:26–2:7). The Court addresses each of Plaintiffs' claims in turn.

### A. Claims Asserted by Recaño as an Individual

As a threshold matter, Defendants move for summary judgment against individual Plaintiff Victoria Recaño on her claims for breach of contract and breach of the implied covenant of good faith and fair dealing. (TWC Mot. Partial Summ. J. 6:3–13). In support of that argument, TWC points to Recaño's deposition, in which she admits that the parties to the Contract are TWC and VBelle. (*Id.* 6:6–11) (citing Recaño Dep. 63:5–12, Ex. B to TWC Mot. Partial Summ. J.). It is well settled that officers and shareholders of corporations are not entitled to bring claims in their own names on behalf of the corporations they own or control. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 477 (2006) ("[I]t is fundamental corporation and agency law—indeed, it can be said to be the whole purpose of corporation and agency law—that the shareholder and contracting officer of a corporation has no rights and is exposed to no liability under the corporation's contracts."). The Court thus finds that Defendants have met their initial burden with respect to Recaño's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

In response, Plaintiffs fail to establish that a genuine issue of material fact exists as to Recaño's standing in this case. Indeed, in their Response, Plaintiffs appear to concede that

Recaño is not a party to the Contract, and state that they would "be willing to submit to the removal of Recaño as an individual from the instant lawsuit." (VBelle Resp. 2:2–3). Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment on Victoria Recaño's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

**B. Breach of Contract**

To prevail on a breach of contract claim under Nevada law, a plaintiff must show (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach. *Richardson v. Jones*, 1 Nev. 405 (1865). "[W]hen parties submit cross-motions for summary judgment, each motion must be considered on its own merits." *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal quotation marks and brackets omitted). In doing so, the Court must consider the evidence submitted in support of both motions before ruling on each of them. *Id.* The Court first addresses Plaintiffs' Motion for Partial Summary Judgment before turning to Defendants' Motion for the same.

**1. Plaintiffs' Motion for Summary Judgment**

"When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480 (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)). Here, Plaintiffs argue in conclusory fashion that because TWC made no other payments to VBelle after the initial payment of $510,000, it breached the Contract. (VBelle Mot. Partial Summ. J. 4:2–11). Notably, it is uncontroverted that TWC made that initial payment to VBelle. (*Id.* 2:17–21).

Plaintiffs' Complaint clarifies that their theory of breach is that Defendants failed to pay Plaintiffs $263,912.27 in expenses owed under the Contract. (Compl. ¶ 27, Ex. A to Pet. Removal). Based on an email sent by Recaño, it appears that this sum reflects (1)

miscellaneous expenses and (2) rent paid by Recaño. (Jan. 11 Email, Ex. 4 to Compl.).[1] Under the Contract, in order to be reimbursed for housing costs and other expenses, Plaintiffs must submit invoices substantiating the amounts sought, which are then subject to approval by TWC. (*See* Contract at 2, Ex. 1 to VBelle Mot. Partial Summ. J.). Here, Plaintiff fails to submit any evidence showing that they either incurred $263,917.27 in expenses or that they submitted invoices to TWC substantiating that amount. (*See generally* VBelle Mot. Partial Summ. J.).

Plaintiffs next argue that TWC breached the Contract by issuing an invalid termination. In support of that argument, Plaintiffs cite *Maykuth v. Adolph Coors*, 690 F.2d 689 (9th Cir. 1982), for the proposition that "failure to provide proper notice of termination can constitute a breach of contract if the notice is required by the contract and the breach causes harm to the plaintiff." (VBelle Mot. Partial Summ. J. 4:22-25). However, in *Maykuth*, the Ninth Circuit found that a company's immediate termination of a contractor violated certain provisions of Montana law which required 90 days' notice prior to termination, an opportunity to cure the defect, and an opportunity to arbitrate. *Maykuth*, 690 F.2d at 694. Because the *Maykuth* court based its holding on Montana law, it is of little use in the instant case. Further, the Contract here is "terminable by either party upon thirty (30) days' written notice for any reason or no reason at all." (Contract at 9, Ex. 1 to VBelle Mot. Partial Summ. J.). TWC provided notice of termination on December 10, 2020, and Recaño later confirmed that the termination became effective 30 days later when she submitted a prorated request for reimbursement to "coincide with [TWC's] letter of cancellation." (Jan. 11 Email, Ex. 4 to Compl.).

Accordingly, the Court concludes that Plaintiffs have failed to meet their initial burden and thus DENIES Plaintiffs' Motion for Summary Judgment on this claim.

///

[1] Notably, this exhibit is not included within Plaintiffs' Motion for Partial Summary Judgment. (*See generally* VBelle Mot. Partial Summ. J.). Indeed, Plaintiffs submit little by way of evidence in support of their Motion.

**2. Defendants' Motion for Summary Judgment**

The Court next turns to Defendants' Motion for Summary Judgment on Plaintiffs' breach of contract claim. Because Defendants would not bear the burden of proof at trial, they can meet their initial burden by either (1) presenting evidence to negate an essential element of the nonmoving party's case; or (2) demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. Here, Defendants argue that they are entitled to summary judgment on this claim because VBelle (1) did not perform under the Contract, (2) did not incur reimbursable expenses or housing costs, and (3) breached the Contract by demanding reimbursement without supporting documentation. (TWC Mot. Partial Summ. J. 6:14–8:7).

Defendants first argue that they did not breach the Contract by declining to pay VBelle the requested $263,917.27 because VBelle did not actually produce any events as required by the Contract. (*Id.* 7:13–8:7). In support, Defendants point to admissions by Recaño in her deposition that the events organized for TWC under the Contract either did not occur or were not her events. (*See* Recaño Dep. 89:17–90:16, Ex. B to TWC Mot. Partial Summ. J.). Defendants also point to admissions by Recaño that VBelle did not incur any housing expenses while the Contract was operative or submit invoices documenting housing costs and expenses. (*Id.* 79:5–9). Accordingly, Defendants have met their initial burden by producing evidence showing that VBelle did not perform under the Contract, and that their refusal to pay VBelle the requested $263,917.27 in fees was not a breach because VBelle neither incurred expenses nor substantiated those expenses.

The burden thus shifts to VBelle to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. In its Response to TWC's Motion for Partial Summary Judgment, VBelle fails to produce any evidence at all, and instead provides only

assertions that VBelle did produce events under the Contract, and that TWC's claim that "moving expenses needed to be directly itemized" is false. (VBelle Resp. 3:9–4:17). As the Court has explained, the nonmoving party cannot avoid summary judgment by "relying solely on conclusory allegations unsupported by factual data." *See Taylor*, 880 F.2d at 1045. Further, even if the Court were to credit VBelle's assertions, they do not establish a genuine issue of material fact which precludes summary judgment for Defendants.

The Court begins with the various events that VBelle asserts it produced under the Contract. Specifically, VBelle asserts that it produced the following events: (1) the "World Premiere and Presentation of the N2O Video" on August 6, 2020; (2) a meeting at Hsieh's ranch "for a Jewel performance and dinner" on August 16, 2020; (3) a Paula Abdul Meet and Greet on August 18, 2020; (4) an N2O V.2 "[v]iewing party presentation" at Hsieh's ranch for N2O V.2 on September 2, 2020; (5) a Petra the Rose City viewing event at Hsieh's ranch on September 26, 2020; and (6) a viewing of the Collective Life Story of Paula Abdul video on October 15, 2020. (VBelle Resp. 3:19–28). Of those six events, Recaño's deposition establishes that only two qualify as "events" pursuant to the Contract: the "World Premiere and Presentation of the N2O Video" on August 6, 2020, and the Paula Abdul Meet and Greet on August 18, 2020. (*See* Recaño Dep. 83:2–17, 90:17–25). In that same deposition, Recaño admitted that the "Jewel performance and dinner" on August 16, 2020, was "not one of [her] events." (*Id.* 90:9–16). Further, Recaño admitted that the "[v]iewing party presentation" at Hsieh's ranch for the second N2O video on September 26, 2020, the Petra the Rose City viewing event at Hsieh's ranch on September 26, 2020, and the viewing of the Collective Life Story of Paula Abdul video on October 15, 2020, were all produced pursuant to a separate contract she had with Hsieh. (*Id.* 22:14–25, 85:5–11, 143:20–144:20).

Even assuming that the two August events actually transpired, the Contract required VBelle to produce "a minimum of one event per month." (Contract at 10, Ex. A to TWC Mot.

Partial Summ. J.). While VBelle argues that the question of whether the six identified occurrences qualify as "events" under the Contract is a question for the jury, TWC has produced undisputed evidence showing that the only possible "events" occurred in August. That leaves four months while the Contract was operative in which VBelle produced no events, which is an unambiguous breach of the Contract. Accordingly, because VBelle has failed to establish a genuine issue of material fact, the Court GRANTS Defendants' Motion for Partial Summary Judgment on this claim.

**C. Unjust Enrichment**

Under Nevada law, to prevail on an unjust enrichment claim, a plaintiff must show (1) a benefit conferred on the defendant by the plaintiff, (2) appreciation by defendant, (3) acceptance and retention of the benefit by defendant (4) in circumstances where it would be inequitable to retain the benefit without payment. *Leasepartners Corp. v. Robert L. Brooks Tr.*, 942 P.2d 182, 187 (Nev. 1997) (quoting *Unionamerica Mortg. v. McDonald*, 626 P.2d 1272, 1273 (Nev. 1981)). Importantly, "a theory of unjust enrichment is not available where there is an express, written contract." *Id.* Only Defendants move for summary judgment on this claim.

Because Defendants would not bear the burden of proof at trial, they can meet their initial burden on a motion for summary judgment by either (1) presenting evidence to negate an essential element of the nonmoving party's case; or (2) demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. Here, Defendants contend that Plaintiffs' claim for unjust enrichment fails as a matter of law because there is an express written agreement between the parties. (TWC Mot. Partial Summ. J. 9:16–18). Defendants produce the Contract, which undisputably constitutes an express written agreement between TWC and VBelle. (*See generally* Contract, Ex. A to TWC Mot. Partial Summ. J.). Accordingly, the Court concludes that Defendants have met their initial burden

with respect to this claim.

The burden thus shifts to VBelle to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. In its Response, VBelle does not articulate a genuine issue of material fact which precludes summary judgment on this claim or address TWC's argument that this claim fails given the presence of an express written agreement between the parties. Rather, VBelle states in conclusory fashion that because "all work was performed according to the contractual guidelines . . . unjust enrichment is present." (VBelle Resp. 4:18–24). As explained, it is undisputed here that the Contract is an express written agreement between the parties, and thus a claim for unjust enrichment is not available. *See Leasepartners Corp.*, 942 P.2d at 187. Accordingly, because VBelle has failed to establish a genuine issue of material fact, the Court GRANTS Defendants' Partial Motion for Summary Judgment on this claim.

**D. Breach of the Implied Covenant of Good Faith and Fair Dealing**

Under Nevada law, a breach of the implied covenant of good faith and fair dealing occurs where the terms of the contract are literally complied with but one party to the contract deliberatively contravenes the intention and spirit of the contract. *Cohen-Breen v. Gray Television Grp., Inc.*, 661 F. Supp. 2d 1158, 1171 (D. Nev. 2009) (quoting *J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1016 (Nev. 2004)). To prevail on a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must show (1) there was a valid contract between the parties, (2) the defendant performed in a manner that was unfaithful to the purpose of the contract, and (3) the plaintiff's justified expectations were thus denied. *Perry v. Jordan*, 900 P.2d 335, 338 (Nev. 1995). The Court first addresses Plaintiffs' Motion for Summary Judgment before turning to Defendants' Motion.

///

///

**1. Plaintiffs' Motion for Partial Summary Judgment**

As the party that would bear the burden of proof at trial, Plaintiffs bear the initial burden of presenting evidence which would entitle them to a directed verdict if the evidence went uncontroverted at trial. *C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480. Plaintiffs present little argument with respect to this claim, contending that because Defendants breached the Contract, they also breached the implied covenant of good faith and fair dealing. (VBelle Partial Mot. Summ. J. 4:26–5:7). However, as explained above, Plaintiffs have failed to show that TWC breached the Contract. (*See* Section (III)(B)(1)). Accordingly, the Court DENIES Plaintiffs' Motion for Partial Summary Judgment on this claim.

**2. Defendants' Motion for Partial Summary Judgment**

Again, because Defendants would not bear the burden of proof at trial, they can meet their initial burden on a motion for summary judgment by either (1) presenting evidence to negate an essential element of the nonmoving party's case; or (2) demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. Defendants argue that they are entitled to summary judgment on this claim because VBelle did not perform under the Contract, and TWC's termination of the Contract was permitted by its terms. (TWC Mot. Partial Summ. J. 6:14–8:7).

As discussed above, Defendants have shown that their termination of the Contract was compliant with the terms of the Contract, as was their refusal to pay VBelle $263,917.27 in expenses. (*See* Section (III)(B)(2)). First, the Contract unambiguously states that it is "terminable by either party upon thirty (30) days' written notice for any reason or no reason at all." (Contract at 9, Ex. 1 to VBelle Mot. Partial Summ. J.). Further, the Contract provides that any requests for expense reimbursement must be accompanied by invoices substantiating amounts owed. (*Id.* at 3). Here, Defendants produce admissions by Recaño that VBelle did not

incur any housing expenses while the Contract was operative or submit invoices documenting housing costs and expenses. (Recaño Dep. 79:5–9, Ex. B to TWC Mot. Partial Summ. J.). Accordingly, Defendants have met their initial burden by producing evidence which negates an essential element of Plaintiffs' case.

The burden thus shifts to VBelle to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. Here, VBelle has failed to carry that burden. VBelle does not mention this claim by name in its response to Defendants' Motion. (*See generally* VBelle Resp.). Nor does VBelle produce any evidence tending to show a genuine issue of material fact, as noted above. (*See id.*); (Section (III)(B)(2)). Accordingly, because VBelle has failed to establish a genuine issue of material fact, the Court GRANTS Defendants' Motion for Partial Summary Judgment on this claim.

**E. Alter Ego**

Under Nevada law, to prevail on a claim for alter ego, a plaintiff must show that (1) the corporation was influenced and governed by the person asserted to be the alter ego, (2) there must be such unity of interest and ownership that one is inseparable from the other, and (3) the facts must be such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction fraud, or promote injustice. *Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 886 (Nev. 1987). Generally, the alter ego doctrine is a theory of liability that empowers courts to "pierc[e] the corporate veil" when a defendant abuses its formalities. *LFC Mktg. Grp. Inc. v. Loomis*, 8 P.3d 841, 845–46 (Nev. 2000). To avoid due process concerns, the Nevada Supreme Court has interpreted this doctrine to supply a separate cause of action to creditors who seek to make a third party liable on an existing judgment. *See Magliarditi v. TransFirst Grp., Inc.*, No. 73889, 2019 WL 5390470, at *2 (Nev. Oct. 21, 2019); *Leach v. Ingram*, No. 2:22-cv-01809-RFB-NJK, 2025 WL 2802411, at *12–13 (D. Nev. Sept. 30, 2025) (concluding that separate claim for alter ego failed as a matter of law because plaintiffs were not judgment

creditors). Only Defendants move for summary judgment on this claim.

Because Defendants would not bear the burden of proof at trial, they can meet their initial burden on a motion for summary judgment by either (1) presenting evidence to negate an essential element of the nonmoving party's case; or (2) demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. Here, Defendants argue that VBelle's alter ego claim fails as a matter of law because it is undisputed that Plaintiffs are not judgment creditors. (TWC Mot. Partial Summ. J. 8:19–27). As noted above, while alter ego may be pursued as a theory of liability, it can only be asserted as a separate claim by judgment creditors under Nevada law. *See Leach*, 2025 WL 2802411 at *12–13. The Court thus concludes that Defendants have met their initial burden with respect to this claim.

In response, VBelle does not address Defendants' arguments regarding its alter ego claim. (*See generally* VBelle Resp.). Indeed, VBelle states that it "does not object to the dismissal of the claims for Alter Ego." (*Id.* 2:1–2). Accordingly, the Court finds that VBelle has failed to establish a genuine issue of material fact, and thus GRANTS Defendants' Motion for Partial Summary Judgment on this claim.

**F. Motion for Leave to Supplemental Evidence**

The Court finally turns to Plaintiffs' Motion for Leave to File Supplemental Evidence. In that Motion, Plaintiffs seek to supplement their Response to Defendants' Motion for Partial Summary Judgment by submitting (1) a sworn declaration of Victoria Recaño, and (2) the videos produced by Recaño. (Mot. Leave 1:18–21, ECF No. 33). Under Local Rule 7-2(g), supplementation is prohibited without leave of court. LR 7-2(g). Relevant here, a party may not file supplemental evidence without leave of court granted for good cause. *Id.* The primary inquiry under this standard centers on the diligence of the moving party. *McAteer v. Sunflower*

*Bank*, No. 2:20-cv-0228-APG-EJY, 2024 WL 1054441, at *1 (D. Nev. Mar. 11, 2024). Specifically, the good cause standard is met if the moving party is reasonably diligent in seeking leave to supplement and the proposed briefing will make a substantive difference to what is pending before the Court. *Id.* (collecting cases).

Plaintiffs contend that they have satisfied the good cause standard because they have moved for supplementation before the Court held a hearing on the underlying motions for summary judgment. (Mot. Leave 2:9–23) (citing *United States v. Maris*, No. 2:10-cv-1337-RCJ-RJJ, 2011 WL 468554, at *5 n.5 (D. Nev. Feb. 4, 2011)). Defendants argue that Plaintiffs have not satisfied the good cause standard because the evidence Plaintiffs seek to produce is not new evidence. (Resp. Mot. Leave 3:16–26, ECF No. 34). Here, the supplemental evidence that Plaintiffs seek to add to their Response all existed at the time that Response was filed—all of the referenced videos were created by Recaño in 2020, and Recaño's declaration could have been created at any time. (Mot. Leave 1:24–2:1). The Court accordingly concludes that Plaintiffs were not diligent in seeking leave to supplement. *Contra Kenai Drilling Ltd. v. Sun Life Assurance Co. of Canada*, No. 2:24-cv-01559-CDS-EJY, 2025 WL 262134, at *10–11 (D. Nev. Jan. 21, 2025) (granting leave to file supplementary evidence which was not available before the moving party filed the underlying motion); *McAtree*, 2024 WL 1054441 at *1 (granting leave to file supplemental deposition where witness was not prepared to be deposed until after moving party filed the underlying motion).

Nor would the supplemental evidence make a substantive difference to the Court's ruling on Defendants' Motion for Partial Summary Judgment. As explained above, the videos Plaintiffs seek to file here were created by Recaño pursuant to a different contract with Hsieh and thus cannot be used to show performance under the instant Contract. (*See* Section (III)(B)(2)). Accordingly, the Court finds that Plaintiffs have failed to establish good cause for filing supplemental evidence and thus DENIES Plaintiffs' Motion for Leave to File

Supplemental Evidence.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Partial Motion for Summary Judgment, (ECF No. 25), is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Partial Motion for Summary Judgment, (ECF No. 26), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Leave to File Supplemental Evidence, (ECF No. 33), is **DENIED**.

The Clerk of Court is kindly directed to enter judgment in favor of Defendants on Plaintiffs' claims for breach of contract, unjust enrichment, breach of the implied covenant of good faith and fair dealing, and alter ego.

VBelle's remaining claims for detrimental reliance and fraud and TWC's counterclaims for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation survive summary judgment. Accordingly, **IT IS FURTHER ORDERED** that the parties must file a Joint Pretrial Order no later than October 26, 2026.

**DATED** this __24__ day of September, 2026.



Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT